WALTER, District Judge:
 

 John J. Del Bino appeals the bankruptcy appellate panel’s ruling that his claim against Bruce Bailey was discharge-able in bankruptcy. Jurisdiction vests in this court pursuant to 42 U.S.C. §§ 1291, 1334. Because this court is in “as good a position as the [bankruptcy appellate panel]” to review bankruptcy court rulings, we independently examine the bankruptcy court’s decision by reviewing
 
 de novo
 
 its conclusions of law and examining for clear error its factual findings.
 
 In re Saylor,
 
 108 F.3d 219, 220 (9th Cir.1997).
 

 FACTUAL AND PROCEDURAL BACKGROUND
 

 On July 29, 1983, John Del Bino and Linda Ellis, guardian
 
 ad litem
 
 of her minor daughter April Zerrilla (“Zerrilla”), entered into a written contingency fee agreement (the “Fee Agreement”) for Del Bino’s services in a medical malpractice action brought on behalf of Zerrilla against Kaiser Hospital (“the
 
 Zerrilla
 
 case”). The Fee Agreement provided that Del Bino would retain a lien on any recovery obtained against Kaiser.
 
 [1]
 

 In April 1993, after approximately ten years of unsuccessful representation, Ellis terminated Del Bino’s representation and substituted Bailey as the attorney of record in the
 
 Zerrilla
 
 case. Shortly thereafter, Del Bino brought the case file to Bailey to discuss the status of the case, the contents of the file, and the work which had been done to date. They also discussed the amount of attorney fees and costs that Del Bino would be paid for the services he rendered. At that time, Bailey orally promised to pay to Del Bino, upon recovery, the costs that Del Bino had incurred and one-third of the fees which Bailey received in the matter.
 

 In September 1993, the case settled and Bailey received funds in the amount of $164,000 for attorney fees and $17,862.51 for costs. Bailey did not inform Del Bino of the settlement or of the receipt of the settlement funds. Instead, Bailey retained the entire sum.
 

 On December 14, 1993, after learning of the
 
 Zerrilla
 
 settlement, Del Bino filed suit against Bailey in San Mateo County Superior Court for breach of oral agreement, fraud, and conversion. By written agreement, the parties settled this matter for $70,000, to be paid by Bailey to Del Bino in fourteen monthly installments of at least $5,000 each plus interest. With a principal balance of $46,539.73, Bailey defaulted on the obligation.
 

 On February 15, 1996, Bailey filed for Chapter VII bankruptcy. Del Bino filed a complaint to determine the nondischarge-ability of Bailey’s obligation to him under the settlement agreement. After the adversary proceeding, the bankruptcy court issued ,on March 7, 1997 its memorandum ruling and held that the debt was nondis-chargeable within the meaning of 11 U.S.C. § 523(a)(6). On appeal, the bankruptcy appellate panel for the Ninth Circuit reversed the bankruptcy court’s ruling and concluded that Del Bino did not have a valid lien because the Fee Agreement under which the lien purportedly arose was void as a matter of law pursuant to California Family Code § 6602. In the absence of a property interest in the nature of a lien, the court explained that “[Bai
 
 *1000
 
 ley’s] use of the proceeds for his own purposes did not constitute conversion supporting the nondischargeability of [Del Bino’s] claim for attorney’s fees under § 523(a)(6).”
 
 Bailey v. Del Bino,
 
 No. NC-97-1417-RyNR, at 15 (9th Cir. BAP. Apr. 24, 1998).
 

 ANALYSIS
 

 I. VALIDITY OF THE LIEN
 

 Section 523(a)(6) of the Bankruptcy Code provides that a debt “for willful and malicious injury by the debtor to another” is not dischargeable in bankruptcy. 11 U.S.C. § 523(a)(6). The injury itself must be deliberate or intentional, “not merely a deliberate or intentional act that leads to injury.”
 
 Kawaauhau v. Geiger,
 
 523 U.S. 57, 61, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998). “The conversion of another’s property without his knowledge or consent, done intentionally and without justification and excuse, to the other’s injury, constitutes a willful and malicious injury within the meaning of § 523(a)(6).”
 
 Transamerica Comm. Fin. Corp. v. Littleton,
 
 942 F.2d 551, 554 (9th Cir.1994) (citations omitted).
 

 While bankruptcy law governs whether a claim is nondischargeable under § 523(a)(6), this court looks to state law to determine whether an act falls within the tort of conversion.
 
 See Quarre’ v. Saylor,
 
 178 B.R. 209, 214 (9th Cir. BAP 1995);
 
 Andrews v. Manser,
 
 99 B.R. 434, 435-36 (9th Cir. BAP 1989). Accordingly, California law defines conversion as “any act of dominion wrongfully asserted over another’s personal property in denial of or inconsistent with his rights therein. It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use.”
 
 Igauye v. Howard,
 
 114 Cal. App.2d 122, 126, 249 P.2d 558 (1952). To maintain a conversion action, “it is not essential that the plaintiff shall be the absolute owner of the property converted but she must show that she was entitled to immediate possession at the time of conversion.”
 
 Bastanchury v. Times-Mirror Co.,
 
 68 Cal.App.2d 217, 236, 156 P.2d 488 (1945).
 

 Under California law, one who wrongfully withholds personal property from another who is entitled to it under a security agreement may be liable for conversion.
 
 See Messerall v. Fulwider,
 
 199 Cal.App.3d 1324, 1329, 245 Cal.Rptr. 548, 550 (1988). Thus, a lien constitutes a property interest which may be converted.
 
 See Weiss v. Marcus,
 
 51 Cal.App.3d 590, 124 Cal.Rptr. 297 (1975). However, a mere contractual right of payment, without more, does not entitle the obligee to the immediate possession necessary to establish a cause of action for the tort of conversion.
 
 See Imperial Valley Co. v. Globe Grain & Milling Co.,
 
 187 Cal. 352, 202 P. 129 (1921) (no claim for conversion because agreement established no lien upon the crop but only established the measure of damages for breach of contract).
 

 The bankruptcy court found that Del Bino “held a hen on a portion of the
 
 Zerrilla
 
 case proceeds by virtue of [his] fee arrangement with Linda Ellis which specifically granted [him] a lien on fees and costs.”
 
 Del Bino v. Bailey,
 
 AP 96-3224DM, at 10 (Bankr.N.D.Cal Mar. 7, 1997). In examining whether Bailey’s conduct with regard to the
 
 Zerrilla
 
 settlement proceeds constituted conversion, the court made the following findings of fact:
 

 Debtor was aware of Plaintiffs lien from the moment that the Debtor was substituted as attorney of record in the Zerril-la case. Despite having knowledge of Plaintiffs lien to the extent that Debtor even orally promised to honor Plaintiffs claim, Debtor admitted to having appropriated the entirety of fees and costs from the Zerrilla settlement for Debtor’s own purposes with no intention of compensating the Plaintiff in any way. Such action by Debtor, in effect, left Plaintiff without a remedy for satisfaction of his
 
 *1001
 
 lien and, thus, caused harm to Plaintiff.
 
 Id.
 
 at 11.
 

 Finding that Del Bino had a valid lien pursuant to the Fee Agreement, that Bailey knew of the lien, and that Bailey’s use of the proceeds
 
 from
 
 the
 
 Zerrilla
 
 settlement constituted conversion for purposes of § 523(a)(6), the bankruptcy court held that Bailey’s debt to Del Bino was nondis-chargeable within the meaning of 11 U.S.C. § 523(a)(6).
 
 Id.
 

 On appeal, the bankruptcy appellate panel reversed the bankruptcy court and held that Bailey’s use of the settlement proceeds for his own purposes did not constitute conversion supporting the non-dischargeability of Del Bino’s claim for attorney’s fees under § 523(a)(6). The court found that Del Bino did not have a lien, and thus a property interest, upon the proceeds of the
 
 Zerrilla
 
 settlement. Accordingly, in the absence of a property interest, Bailey’s conduct could not constitute conversion.
 

 In reaching its conclusion, the court relied on California Family Code § 6602 which provides that “[a] contract for attorney’s fees for services in litigation, made by or on behalf of a minor, is void unless the contract is approved, on petition by an interested person, by the court in which the litigation is pending or by the court having jurisdiction of the guardianship estate of the minor.” The contract purportedly creating the lien for Del Bino’s attorney fees was made on behalf of Zerrilla, a minor. Accordingly, because the contract was not approved by the appropriate court, the court found that the Fee Agreement and any lien based thereupon were void.
 

 Del Bino argues on appeal that regardless of the effect of California Family Code § 6602 on the Fee Agreement, he held a hen on the
 
 Zerrilla
 
 settlement proceeds. Accordingly, based on the bankruptcy court’s findings of fact as to the conversion of his hen interest by Bailey, he concludes that Bailey’s debt to him was nondis-chargeable within the meaning of § 523(a)(6).
 

 In support of his position, Del Bino relies significantly on
 
 Matter of Pacific Far East Line, Inc. (“Pacific
 
 ”), 654 F.2d 664 (9th Cir.1981), and
 
 Fitzsimmons v. Jackson,
 
 51 B.R. 600 (9th Cir. BAP 1985). In
 
 Pacific,
 
 pursuant to a contingency fee contract, Joseph Alioto rendered legal services to Pacific Far East Line, Inc. (“Debt- or”) in a lengthy lawsuit against Northrop, Inc. One month before Northrop agreed to settle with Debtor, Debtor filed for bankruptcy under Chapter XI. Because the debtor in possession failed to assume the contingency fee contract on behalf of the estate within 60 days of the filing of the petition, Alioto was discharged by operation of law. Thereafter, Alioto brought a claim against the bankruptcy estate to recover the fees for his services.
 

 In discussing Alioto’s right to compensation, the Ninth Circuit noted that “an attorney retained under a contingency fee contract, and later discharged by the client without cause, holds a claim against the client for the reasonable value of his services.” 654 F.2d at 668 (citations omitted). However, this claim, without more, would be unsecured and subject to pro rata reduction.
 
 Id.
 
 Accordingly, the court addressed whether Alioto had an interest in the nature of a lien against the settlement. Relying on
 
 Isrin v. Superior Court,
 
 63 Cal.2d 153, 45 Cal.Rptr. 320, 403 P.2d 728 (1965), the Ninth Circuit held that Alioto was entitled to an equitable lien because the parties intended that Alioto look directly to the settlement for payment of his fees.
 
 Pacific,
 
 654 F.2d at 669.
 

 In
 
 Fitzsimmons,
 
 the bankruptcy appellate panel concluded that although Jess Jackson did not have a valid contract with the persons he represented in a condemnation proceeding, he was entitled to reasonable attorney fees for his services and also to a lien to secure payment of the fee
 
 *1002
 
 award.
 
 [2]
 
 The trustee of Fitzsimmons’ bankruptcy estate argued that since no contract ever existed between Jackson and Fitzsimmons, no lien based on quantum meruit could ever have arisen. The court noted that while the jurisprudential authorities cited by the trustee
 
 all
 
 involved liens which arose under valid contracts, those authorities did not “preclude the awarding of a lien in the absence of a valid contract.”
 
 Fitzsimmons,
 
 51 B.R. at 612. Moreover, the court interpreted
 
 Pacific
 
 as directing that the court “look to the intent of the parties, not the contract, to determine if an attorney’s lien arose.”
 
 Id.
 

 From these cases, Del Bino asserts that an equitable lien was created when the guardian
 
 ad litem
 
 of the minor child he represented manifested the child’s intent through the Fee Agreement expressly providing for the creation of a lien to secure his fees. Following
 
 Fitzsimmons,
 
 he contends that the lack of an underlying contract for attorney fees does not affect, in any way, the creation of his equitable lien to secure the payment of his fees.
 

 Both
 
 Fitzsimmons
 
 and
 
 Pacific
 
 are distinguishable from the instant case, however, because of California Family Code § 6602. The state of California enacted § 6602 as a matter of public policy to protect minors by providing judicial oversight over all contracts for attorney fees for services rendered on behalf of a minor. The statute renders void any contract for legal fees not approved by the court. Recognizing a hen based upon a contingency fee agreement obtained without court approval would eviscerate this protection. Accordingly, we decline to extend the rationale of
 
 Fitzsimmons
 
 and
 
 Pacific
 
 to the instant ease. In the absence of a property interest in the nature of a lien, we agree with the conclusion of the bankruptcy appellate panel that Bailey’s conduct did not constitute conversion and, therefore, that Del Bino’s claim for attorney fees did not fall within the meaning of 11 U.S.C. § 523(a)(6).
 

 We note that Del Bino was entitled to compensation for his services in spite of his failure to obtain court approval of the Fee Agreement.
 
 See
 
 California Family Code § 6602 (providing that if a contract for attorney’s fees made on behalf of a minor is not approved “and a judgment is recovered by or on behalf of the minor, the attorney’s fees chargeable against the minor shall be fixéd by the court rendering the judgment.”) However, Del Bino’s right to payment for the reasonable value of his services rendered is a general unsecured debt subject to discharge in bankruptcy.
 

 II. ESTOPPEL
 

 Del Bino also contends that Bailey should be estopped from asserting the application of California Family Code § 6602 because he relied upon Bailey’s oral agreement to pay Del Bino for his services upon recovery and, thus, did not file a notice of lien. He contends that this reliance was reasonable and that had he filed the notice of lien, the parties and/or the court would have been put on notice that the contingency fee agreement needed to be approved.
 

 Del Bino’s argument is unpersuasive. The equities in the instant case do not justify estoppel. The sole reason that a valid lien was not created was because Del Bino did not get the Fee Agreement approved by the court as required by California Family Code § 6602. The fact that Del Bino relied on Bailey’s assertions that he would be paid out of the proceeds and, thus, did not file a notice of hen is irrelevant because a notice of lien does not create rights which do not otherwise exist.
 

 CONCLUSION
 

 The bankruptcy appellate panel did not err in finding that Bailey’s use of the
 
 *1003
 

 Zerrilla
 
 settlement proceeds for his own purposes did not constitute conversion supporting the nondischargeability of Del Bino’s claim for attorney’s fees under 11 U.S.C. § 523(a)(6). Because Del Bino failed to get court approval of the Fee Agreement, it was void as a matter of law pursuant to California Family Code § 6602, and no property interest in the nature of a lien arose therefrom.
 

 AFFIRMED.
 

 [1]
 

 . The Fee Agreement provided that "[a]ll
 
 sums
 
 due to the attorneys, including all costs advanced and incurred by the attorneys, shall be a lien in favor of the attorneys on any money or other property recovered by the undersigned.”
 

 [2]
 

 . Jackson did not have a valid contract for services because the fee agreement was conditioned on its being reduced to writing, a condition which was never satisfied.